THE MODEL PLAN FINANCE CORPORATION, A NEW JERSEY CORPORATION, APPELLANT, v. WARREN EAGLES, RESPONDENT.

Submitted October 31, 1930—Decided February 2, 1931.

For the appellant, *Corn & Silverman*.

For the respondent, *King & Vogt*.

The opinion of the court was delivered by

PARKER, J. The controversy is founded on a lease to respondent by one Devoe of a motor truck, and the making by respondent to Devoe of certain promissory notes representing payments called for by the lease. These notes were assigned or otherwise transferred to the plaintiff, who admitted at the trial that any defense available against the payee was available against plaintiff. The latter also, apparently, acquired the lessor's rights in the lease. The suit was on the assigned notes, and on a book account of De Voe against Eagles also assigned to plaintiff.

The crux of the case is a paper purporting to be (a) a transfer by Eagles to one Vandenburg of all his rights in the truck, subject to repair bills and unpaid notes relating to the same; and (b) a release by De Voe to Eagles of "any further obligations on above-mentioned truck." This paper, omitting printed letterhead, which has no relevancy to the case, reads as follows:

"August 8th, 1921.

I, Warren Eagles, hereby agree to sell and transfer all rights, titles and interests which I may have in a one three and one-half ton Schacht truck, No. 1070, to Charles Vandenburg. It is understood that Charles Vandenburg is to pay all debts that is against this truck such as repair bills and balance of notes subject to the lease agreement. Charles Vandenburg agrees to pay all these above-mentioned items under the condition that when same are paid, this truck becomes his property and he is to have a free and clear bill of sale for said truck. It is hereby agreed by Charles Vandenburg that he is to pay $100 per week until the back debts on the truck have been paid up, at such time, he is only to turn in enough to meet the notes which are still against the truck.

It is further agreed by all parties concerned that these payments are to be paid to A. De Voe at his place of business.

It is further agreed by A. De Voe that he will release Warren Eagles of any further obligations on above-mentioned truck.

Witnesseth: A. DE VOE.

H. D. BOER.    Signed:

W. EAGLES.

CHARLES VANDENBURG.

Sworn before me this 8th day of August, 1921, at Newark, New Jersey.

RACHEL A. LYONS,

Notary Public of N. J. [L. S.]"

As will appear, much of the controversy revolves around the position on the paper of the name "A. De Voe," which was concededly signed by him. The facts leading up to the paper were that Eagles found himself unable to make a success of operating the truck, and was inclined to give up the attempt to do so; that Vandenburg proposed to take it over and indemnify Eagles against the notes and book account, and actually did take it over pursuant to the document above set forth, and incurred certain obligations to De Voe for repairs and parts, which the latter for convenience posted to the Eagles' account in his ledger. As to this, there was no controversy. Just before the paper was signed, Eagles and Vandenburg went to De Voe's place of business to arrange the transaction, and according to the testimony, De Voe went across the street, dictated to a young woman clerk in another office the paper excepting the last clause, returned, and submitted it to Eagles and Vandenburg. Eagles refused to sign it unless he were released from his obligations to De Voe, so the latter went back and had the final clause added ("It is further agreed by A. De Voe," &c.), the parties all signed it, and one H. D. Boer, who was not sworn at the trial but who, according to De Voe's testimony, "appears as a witness," signed under the word "Witnesseth," the paper was delivered and the transaction closed. This paper was pleaded as a release, and its effect as such challenged. If it was a good release the verdict and judgment for defendant were right, un-

less vitiated by trial error. One of the grounds of appeal is that the court erred in refusing to direct a verdict for plaintiff on the grounds that "the terms of the paper purporting to be a release could not be varied orally;" that "the paper was not a release;" and that "there was no release of the claims sued upon." Appellant, assuming for the sake of argument, that De Voe signed as a party—and the questionable position of his name is of course apparent—nevertheless argued that the language of the release clause imports only an agreement to release Eagles from future obligations touching the truck. Our view is to the contrary; for the evidence clearly shows that upon the transfer to Vandenburg there would be no future obligation. The phraseology is of course inaccurate, and naturally so as dictated by a layman in a hurry; but the intent we think is clear, viz., to discharge Eagles as an original debtor and to take on Vandenburg as a substitute debtor by novation. It is suggested that the paper was without consideration moving to De Voe; but the novation is the answer to it, as Vandenburg may have been and probably was a more satisfactory debtor than Eagles, who was hopelessly in arrear.

We proceed to the challenged rulings on evidence, which relate entirely to the circumstances under which De Voe affixed his signature and his intent in so doing, and whether it is to be regarded as that of a party, or only of a witness, which seems to be the other alternative. It is inferable from the paper itself that he signed as a party, otherwise the release clause is a mere recital in a contract *inter alios.* That, however, is not conclusive. On the admissibility of parol evidence to explain and prove the capacity in which he signed, our cases are clear. *Kean* v. *Davis,* 21 *N. J. L.* 683; *Isham* v. *Cooper,* 56 *N. J. Eq.* 398, 409. Both are decisions by this court, and the latter is strikingly similar on the facts to the case before us, for the inquiry was whether Isham's initials, inserted by him in a written instrument, imported an obligation assumed by him or a mere attestation. The late Mr. Justice Dixon, speaking for this court, said (on page 411): "On the suggestion being made, the probability is perceived

at once that the initials may have been written with either intent, and which [intent] actually existed must be decided on extrinsic evidence." Clearly, on the authority of these cases, if doubt as to the intent appeared on the face of the paper, parol evidence was admissible to resolve that doubt; and evidence as to what was said and done at the time was also relevant to that inquiry.

This renders it unnecessary to take up the rulings on evidence in detail, for they are all controlled by what has just been said. There are certain technical reasons why appellant should not prevail as to some of them, as for example, denying motion to strike out a lengthy answer after it had been completed without objection; but we think it unnecessary to discuss them.

The judgment will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 14.

*For reversal*—None.